FILED
United States Court of Appeals
Tenth Circuit

August 2, 2017

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

WALTER BROWN EWING,

    Defendant - Appellant.

No. 16-5179
(D.C. No. 4:16-CR-00091-GKF-1)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **PHILLIPS**, and **McHUGH**, Circuit Judges.
_____

    Walter Brown Ewing pleaded guilty to one count of possession of
methamphetamine with intent to distribute but reserved the right to appeal the district
court's denial of his motion to suppress. Exercising jurisdiction under 28 U.S.C.
§ 1291, we affirm.

## I. Background

    After receiving a tip from an informant who wished to remain anonymous that
Mr. Ewing was selling methamphetamine out of his home, Officer Keith Osterdyk

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

opened an investigation. He began by researching Mr. Ewing's criminal history. He looked at an Oklahoma Department of Corrections report that showed Mr. Ewing had been convicted of multiple drug-related offenses. However, one of those offenses actually belonged to someone else, and the report indicated that the person was still incarcerated. The remaining drug-related offenses shared a single case number.

Officer Osterdyk conducted surveillance of Mr. Ewing's home on three occasions and observed numerous vehicles pulling into the driveway. The occupants were admitted to the home and typically stayed for fifteen minutes to an hour. Based on his training and experience, Officer Osterdyk believed this type of activity indicated that drug-dealing was occurring.

Officer Osterdyk and another officer conducted a "trash pull" by collecting six trash bags that were near the curb for pickup.[1] A search of the bags yielded plastic baggies and glass smoking devices with a white residue that a field test indicated was methamphetamine. Officer Osterdyk also found handwritten notes of names and money amounts, which he believed were "drug notations." Aplt. App., Vol. I at 23.

Based on his investigation, Officer Osterdyk applied for a search warrant. The supporting affidavit incorrectly stated that Mr. Ewing had been convicted of four drug-related offenses. The affidavit also described the information Officer Osterdyk received from the informant, his observations from the surveillance, and the items

_____

[1] Mr. Ewing testified at the suppression hearing that he did not place his trash cans near the curb, but the district court did not find his testimony credible.

2

discovered in the trash, including the drug notations. A judge issued the warrant, and police executed a search of the home, seizing about 36 grams of methamphetamine.

After he was indicted, Mr. Ewing moved to suppress the seized evidence. He argued that the affidavit contained misrepresentations and material omissions and therefore failed to establish probable cause for issuing the warrant. Specifically, he argued that he had only one drug-related conviction, which was over ten years old at the time of the affidavit. He also argued that his trash was in his driveway, not at the curbside, and therefore the evidence from the trash could not be considered. And he argued that the affidavit contained no information from which to conclude that the informant was reliable.

The district court held a hearing on the motion, at which the officers and Mr. Ewing testified. Regarding Mr. Ewing's prior convictions, the court concluded that even though one of the convictions on Mr. Ewing's record belonged to another person, "the fact remains that [Mr. Ewing] had, in fact, been convicted of a drug offense." *Id.*, Vol. II at 70. The court credited the officers' testimony about the location of the trash cans at the time of the "trash pull," and it denied the motion, concluding that Officer Osterdyk "did not intentionally misrepresent the material facts which constituted his application for the search warrant." *Id.* It further concluded that Officer Osterdyk "relied in good faith on the warrant once it was signed by the judge." *Id.* at 71.

On appeal, Mr. Ewing argues that the search was not supported by probable cause because of the affidavit's false statements and material omissions. He also

3

argues that the good-faith exception does not apply because the warrant's flaws stem from recurring and systemic police negligence.

## II. Law

Evidence seized pursuant to a search warrant must be suppressed if "the affiant knowingly or recklessly included false statements in or omitted material information from an affidavit in support of a search warrant and . . . the corrected affidavit does not support a finding of probable cause." *United States v. Garcia-Zambrano*, 530 F.3d 1249, 1254 (10th Cir. 2008). "[W]e review for clear error the district court's findings regarding the truth or falsity of statements in the affidavit and regarding the intentional or reckless character of such falsehoods." *Id.* We review de novo whether the corrected affidavit (after excising any false statements and considering any material omissions) supports a finding of probable cause. *Id.*

## III. Analysis

## A. False Statements

The affidavit falsely states that Mr. Ewing had been convicted of and imprisoned for four drug-related offenses. Nonetheless, we conclude the district court's determination that Officer Osterdyk did not intentionally misrepresent Mr. Ewing's criminal history is not clearly erroneous. Although Mr. Ewing appears to have only one such conviction, the false statement is immaterial because even after excising it from the affidavit, the affidavit provided probable cause to issue the warrant. In light of the other evidence cited in the affidavit, including the items found in the trash, whether Mr. Ewing had one or four prior drug-related convictions

4

is an insubstantial detail. It is not clear why the case erroneously appeared on Mr. Ewing's criminal history report, but nothing suggests that Officer Osterdyk was responsible for the error, and "honest errors by the affiant are not grounds for suppression." *United States v. Sanchez*, 725 F.3d 1243, 1247 (10th Cir. 2013).

Mr. Ewing argues that the affidavit contains another false statement concerning the placement of his trash cans when the officers collected the trash. However, he has not shown that the court's factual finding that the cans were at the curb is clearly erroneous. Both officers testified at the suppression hearing that the cans were at the curb. Officer Osterdyk stated, "As a matter of fact, there was another day that I attempted a trash-pull and saw it up by the fence and chose to wait until it was by the curb as the law allows." Aplt. App., Vol. II at 44. The court found the officers' testimony more credible than Mr. Ewing's on this issue. "We will not reweigh the evidence presented to the district court, second guess the district court's credibility assessments, or question reasonable inferences the district court drew from the evidence." *United States v. Campbell*, 603 F.3d 1218, 1228 (10th Cir. 2010) (internal quotation marks omitted).

Mr. Ewing also argues that Officer Osterdyk's statements about the traffic at Mr. Ewing's home were false, but we discern no clear error by the district court in crediting those statements. Though the other officer testified he did not observe the traffic or draw any conclusions from the surveillance, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 1229 (internal quotation marks omitted).

5

Mr. Ewing also argues that Officer Osterdyk falsely stated in the affidavit that the handwritten notes from the trash were "drug notations." Aplt. App., Vol. I at 23. However, next to the other evidence seized from Mr. Ewing's trash—baggies and glass smoking devices with a white residue that tested presumptively positive for methamphetamine—this statement is insubstantial. Further, even if the notes were related to Mr. Ewing's legitimate business as he contends, he has made no showing that Officer Osterdyk's assessment of the notes was deliberately or recklessly misleading.

## B. Material Omissions

Mr. Ewing argues that material facts were not included in the affidavit which would have altered the issuing judge's determination of probable cause. He argues that Officer Osterdyk should have reported that Mr. Ewing operated two legitimate businesses out of his home and that four other people lived there. These facts, he contends, would explain any higher-than-expected levels of traffic. But even if there could have been an innocent explanation for the traffic, "innocent conduct will inevitably support some showings of probable cause." *United States v. Biglow*, 562 F.3d 1272, 1281 (10th Cir. 2009). Mr. Ewing has not shown that consideration of the businesses and other residents would have made a difference with respect to the determination of probable cause.

Mr. Ewing also argues that the omission of the informant's identity was material and should have been disclosed. He contends that his wife may have been the informant and that she had a motivation to falsify information because they were

6

"embroiled in a bitter break up of their marriage." Opening Br. at 21. But "[w]hen there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant." *United States v. Tuter*, 240 F.3d 1292, 1297 (10th Cir. 2001). As stated in the affidavit, the informant's tip was independently corroborated by Officer Osterdyk's investigation; therefore, the informant's identity was immaterial.

We conclude the district court correctly determined that the affidavit provided probable cause to issue the search warrant. As a result, we need not reach Mr. Ewing's arguments with respect to the good-faith exception to the warrant requirement.

## IV. Conclusion

The judgment is affirmed.

Entered for the Court

Carolyn B. McHugh
Circuit Judge